Good morning again, Your Honors. Mark Vanderhout, appearing with Lisa Weissman-Ward on behalf of Mr. Olivarria, who is present in court today, along with his wife, Demetra Kuchis, and their 12-year-old son, Anthony. Mr. Olivarria is a lawful permanent resident who has lived in the United States for over 25 years, since the age of 16. He and his wife have been married for over 18 years. The couple had another child who passed away within hours of birth due to a congenital birth defect, unfortunately. And Mrs. Kuchis suffers from multiple sclerosis, is completely dependent on her husband for her health insurance and to administer her daily injections. The issue before the Court is one that has never been addressed by this Court, whether the elimination of Section 212c relief for a lawful permanent resident who specifically made the choice, documented in the record, to proceed to trial, specifically in reliance on the fact that he would still be eligible for a deply for relief from Section 212c if found guilty. Kennedy, where does it tell us in the record that he made it? The administrative record is at 499. What does it say? I'm sorry. What does it say to show that he made the decision specifically in reliance? This is a declaration which was uncontroverted. It says, when I was in jail, people told me that if I was convicted, I would not get deported if I served less than 5 years. They told me that if I served less than 5 years, that I could still qualify to stay in the United States. They told me that the government might try to deport me, but if that happened, I would be able to go before a judge as long as I didn't serve 5 years, and I would be able to explain everything to a judge. Then he says, before I was convicted, I was offered a plea bargain that I turned down. If someone had told me that there had been a difference in going to trial and accepting the plea in terms of how it would have affected my immigration status, I would have pled guilty at that point in time. So there's uncontroverted evidence in the record. The BIA or the immigration judge never disputed the credibility. And under this Court's precedence and many other decisions, that has to be taken as true. It's uncontroverted, and the government has never disputed that. Let me ask you a question that is a little troubling to me before we even get to your argument. It is true that your client was also convicted with a firearm conviction, correct? That is also correct. And the firearm conviction would put him in the same place that he is with any other conviction. That is also correct, is it not? Right. Under 212C as well as under 212H? He would be able to, and the government conceded this, he's eligible for a waiver of both under the Gabrielski decision, the Board of Immigration Appeals. And the government has conceded that. Well, I don't know where the government conceded it, I guess. Before the immigration judge, there isn't a dispute that if he's eligible for 212C, in other words, if 212C cannot be applied to actively, then he's eligible because the way it works, he's yes. I guess my question is, the firearm charge rendered him deportable under 212C, and if I were, if I had been counsel, I would have then fought under 212C and 212H at the same time. Nobody did. He didn't. He wouldn't need that, Your Honor. The way it would work, he would be adjusting status. The firearm ground is not a ground to admissibility. It's not. It's only a ground to deportability. And under the Gabrielski case, the board, both are considered together. He gets a waiver of the drug offense under 212C, and then he's not inadmissible for the firearm because it's not a bar to admissibility. And there's, the government conceded that in the immigration court and has never argued to the contrary. I don't think they would. I think that's pretty clear law in the Board of Immigration Appeals and throughout the country, actually. So he wouldn't need a 212H waiver. The ---- I guess I'm having a tough time seeing how, even given the case you've suggested. But if that's your argument, I'll take it under advisement. If you could, and I'm happy to provide the Court. It's in the briefs, the matter of Gabrielski. I know what the case is, and I've read the case. I just don't agree, I guess. Well, the case says that if it's a firearm, you don't need this case. It says if it's a firearm, it's not a ground of inadmissibility. The government argues that Armendariz, the Ninth Circuit's decision, controls this case and must lead the Court to reject Mr. Olvia's argument. But Armendariz did not contemplate or confront an actual scenario where the uncontroverted facts in the records show that the individual did rely on the future potential availability of 212C. The panel in Armendariz stated, based on no evidence, that aliens who elected a jury trial cannot plausibly claim that they would have acted differently if they had known about Section 440D. But the Armendariz panel relied on the Seventh Circuit's decision in Laguerre. Laguerre was overturned by the Supreme Court. In the Seventh Circuit, Laguerre panel hypothesized, and they stated it would be absurd for us to think that people consider the immigration consequences and would resist convictions more vigorously if they knew they might be deported. And they, therefore, said you can't apply 212C – you can apply 212C retroactively. If I can go ahead. Did you have a question, Judge Hawkins? Just a quick question. What your client relied upon was some fellow detainee told him? I don't know if it's – I think it was actually more than one, but that is a lot of the way that people in prison. I didn't ask for an explanation, counsel. I simply am looking for the fact. Yes. The fact is that this advice that your client relied upon came from one or more fellow detainees in custody, correct? That is correct, Your Honor. It did not come from his lawyer. It did not come from the lawyer, correct. And as far as being advised of the difference between pleading guilty and going to trial and the immigration impact that might have, there was no way for his lawyer to know that, was there? His criminal defense lawyer wasn't an immigration expert and didn't discuss the immigration consequences with him. So in the criminal case, he understood, based on his understanding of the law, that even if he went to trial, that as long as he didn't serve five years and he had very good reason to believe that, that he'd be eligible for relief from deportation and be able to go before an immigration judge. And that's the facts that the Third Circuit debated and discussed and ruled on in the Ponapulu case. In that case, Your Honor, the only difference was that his lawyer advised him. But I don't think that makes a material difference under the Supreme Court precedents. As long as someone is considering the immigration consequences when they make a decision and they did that relying on the fact that they'd still be able to go before a judge, that's what the Supreme Court says counts. I don't think it makes a difference. I mean, if we go to Armand Dares, this would say no retroactive effect to anybody who went to trial. And Saravia Paraguanda, that's tough for an Idaho guy who knows and talks these names all the time, would also be of the same. So the best I've got to suggest for relief for your client is Hernandez de Anderson, isn't it? Because Hernandez de Anderson says any reliance must be objectively reasonable under the circumstances at the time. Correct. Correct. And to me, then, what we have to suggest is that what he had in front of him or what he was talking to, who he was talking to or what the situation was, was objectionably reasonable at the time, given the charges he had against him, correct? That is correct, Your Honor. And the charges against him were what? It all came out of the same instance. It was the drug. But that's not the question. The question is the charges were what? Drug possession, possession for sale, and possession of a firearm. And so there were two felonies and two misdemeanors? Correct. And what was the maximum possible penalty for two felonies and two misdemeanors? Well, the government states it was 20 years. I haven't looked at that. But if you... I mean, if he goes to trial and he therefore suggests that the judge can go that high, I guess I'm still back to the old thing. How do I make it objectively reasonable? And that's a good question, Your Honor. One judge has already thrown out the case. The evidence against him was extremely weak. In fact, he got four years and served two and a half years. And that's what people told him that he might be able to expect. And so I believe that under as the Court said in Ponopulu, which is also a case where the maximum sentence was far, far greater, the reasonableness of relying on the fact that he might get. And it's only might get. It's not a certainty. The Supreme Court said as long as there's a possibility and someone relies on the possibility of avoiding deportation rather than the fact that he would be certainly deported, that's the difference. And there was certainly a possibility and it turned out in reality he only would get much less than five years. And in effect, what we really have to look at is the only place, if convicted at trial, where there could be possible reliance would be the turndown of a plea to a non-deportable offense. Isn't that correct? No, Your Honor. As the Third Circuit said in Ponopulu, you could rely on the fact that even if convicted of a deportable offense, you'd still remain eligible for 212c relief. And that's the facts of this case and the facts of Ponopulu. I'm over my time and I'd like to have a day, maybe, to give me 30 seconds and maybe not. Thank you. Thank you. Good morning. May it please the Court. Dallin Holyoak for the Attorney General of the United States. We are here today to discuss a statute that Congress repealed 14 years ago, specifically to eliminate relief to criminal aliens like Mr. Garcia Olivaria. Mr. Garcia elected to go to trial on his cocaine and firearms offenses, hazarding a conviction of 20 years and ineligibility for relief prior to the repeal of 212c. Despite his bold pronouncements founded exclusively on his one-page declaration, he has not provided evidence of affirmative conduct that he attributed significance to a 212c waiver or that his allegations of reliance were objectively useful. Would the case be different if the U.S. attorney had said to him, here's a plea. If you go to trial, we'll ask for no more than four years. And we can assure you, based on past experience, that that would be the maximum sentence you will receive from this judge. Would that be a different case? Yes, Your Honor. And this is why I think the agency, first of all, would have to address that before we could get to that issue. But those are facts that would distinguish this case, but those aren't the facts here. I think that's an example of nonviolence. I know they're not the facts here. If they were, I wouldn't be asking you a hypothetical question. Correct. So you say that if Judge Hawkins asked the question, you know, you relied on a prisoner, and that led me to wonder if he had relied on the U.S. attorney, would that be different? Or if he had relied on his lawyer, would it be different? Yes, Your Honor. I think it's the question is whether the reliance was reasonable. And I think that's why these cases No. There's a recent Supreme Court case, as I recall, in which it said that defense lawyers generally are not aware of their duty to advise people in criminal cases of the immigration consequences. And that was because most criminal lawyers weren't aware of the answers. And it said that it would be malpractice now, ineffective assistance, not to learn of that and advise their clients. So at that time, I think it was not surprising if the defense lawyer was not aware of that and what the consequences would be. So is it really unaware, is it really unreasonable to rely on your fellow inmates since the government relies on their testimony, for example, about confessions and then prosecutes people because people in their cells say he confessed to me? If that's not unreliable, unreasonable. If the government can rely on the fellow cellmates, why is it unreasonable for a person facing a charge to rely on those same people? Well, Your Honor, I think there are several answers to that question. I think that, first of all, the first answer is that those kind of issues are not before this Court. And I think that if he were to challenge his issues. Which issues are not before this Court? The issue of challenging his criminal conviction based on ineffective assistance of counsel. If he believes. I'm not challenging it. I'm asking is it unreasonable to rely on your cellmate or people facing the same problems rather than asking your lawyer who probably isn't familiar with that? Well, Your Honor, I do believe it's unreasonable because at this point there can't be settled expectations. If you're consulting with another individual who's in your cell who may or may not know the law, may or may not know your case, and then you decide to hook your wagon to that entire claim, I think that's unreasonable. I don't think you can have a settled expectation that you're going to get relief based on the hearsay of other prisoners. Well, even if the BIA doesn't find that you didn't rely on it, if it finds you're credible and that you did rely on it, is that still unreasonable? Well, are you speaking, for example, in this case where he has the declaration that hasn't been challenged and whether or not that's credible evidence that he had reliance? I'm not sure if I understand the question. Can I ask this question? At the time the Petitioner made the decision to go to trial, was the decision that said if you plead guilty, you're still eligible for 212, but not if you go to trial, was that on the books? No. St. Cyr was not at the time. So he couldn't have relied on it. So his lawyer couldn't have advised him at that time of the difference in treatment, is that right? That's correct. And there's also another point in this case in which he risked a maximum penalty of 20 years. So there's really no advice for his lawyer to give him, because at that point he would tell him, look, you are facing a possible conviction of 20 years, which is going to make you ineligible for relief today. I mean, not when it's repealed in 1996, but when his convictions went in. So his lawyer would have to say, look, you're risking, you might go to trial and you might be sentenced to 20 years, and you're not going to be eligible for anything. I do think that we're actually here to answer just one question. I think that's pointed out in Hernandez to Anderson. At page 939, the Court wrote, we have formed this rule in the negative. Aliens making a Lansgraf retroactivity argument cannot prevail if they cannot plausibly claim they would have acted differently if they had known about the elimination of relief. So as applied in this case, on the record, can Mr. Garcia plausibly claim that he would have acted differently had he known about the elimination of relief? The answer is no. The cases of this Court make clear that he cannot plausibly claim that he would have not committed the crimes for which he was committed or for which he was convicted. Sorry. He went to trial, so you cannot plausibly claim that he would try to prove his innocence more fervently. And most importantly, he can only claim that he would have pled to a crime that would have left him eligible for relief. But in this case, if the Court looks at his declaration on administrative record, page 499, it fails to state the plea he was offered. And it fails to state that it would have left him eligible for relief. That's the linchpin. There's just not the evidence in this case. The agency could have not possibly gone outside of Armendariz without violating or could not have possibly gone outside this Court's guidance in Armendariz because there was no evidence to push the agency outside of that. There is no reliance, and the reliance wasn't reasonable. I do want to talk a little bit more about his declaration. If you look at his declaration, it's very nonspecific. It's on AR-499. It doesn't say, and in fact, opposing counsel admitted that he did not rely on the advice of counsel. It never says in there that he relied on other detainees. It just says people and they. So we don't know from the record who he relied on or who was saying what. Can we assume it wasn't the guards? We can assume. We can't really assume who it was. Maybe it was the guards. Maybe it was the detainees. A perfect example in this case, the evidence just isn't there. There's just not enough there to give any kind of distinction from Armendariz. And also, as he pointed out in his reply brief, he said that he learned all about the potential immigration consequences of going to trial. The declaration doesn't say he learned all about the potential immigration consequences. It just said he thought that if he was convicted and he served less than five years that he would be eligible for 212C. And actually, I think that's an important point because it's actually a concession. If you look at the second to last sentence of paragraph 4 where he says, people told me the INS might want to deport me, but if that happened, I could go before the judge as long as I didn't serve five years. He expresses there uncertainty about whether or not he's going to be eligible for any relief. So if you look at that statement, which is the facts of this case, there's no reliance. So that reliance cannot be objectively reasonable under the standard pronounced by this Court in Hernandez v. Anderson. I want to make one more point, too. Petitioner. I'm sorry. Petitioner attacked. I'm sorry. Why do you want to make another point? Oh. I just wanted to make one challenge to one of the arguments. When you've responded to the arguments counsel has made. Well, then, if the panel has no further questions, I'd like to conclude with the panel's permission.  Thank you. You may have a minute. Just very briefly, and both refer the Court to the St. Cyr's decision, because I think it's very important on the issue of what was the possible sentence and was it reasonable reliance. In St. Cyr, the individual got 10 years, and he would have been ineligible for relief had he served five of those years. Five of them were suspended, but he might have served the entire sentence, and yet the Supreme Court said there was still reasonable reliance in that point. And I think it's really important. And Ponopulu says the same thing in the Third Circuit. As long as there's a possibility that he might stay eligible, that is the crucial question. And here there's no question that there was a possibility that he might stay eligible rather than the complete certainty that he wouldn't be. So the government has it backwards. He doesn't have to prove that he definitely would have gotten relief or definitely would have been eligible. He just has to prove that when he made the decision to go to trial, he was making it knowing there was possibility of going before a judge relying on that and saying there was a possibility he might still be eligible and a possibility he might win the case, and that set forth in the St. Cyr decision of the Supreme Court. Thank you, counsel. The case is argued and will be submitted.
judges: Reinhardt, Hawkins, Smith N. R.